ORIGINAL

1  LUCAS VALLEY LAW
   MARK K. de LANGIS (SBN 190083)
2  2110 Elderberry Lane
   San Rafael, California 94903
3  Telephone: (415) 472-3892
   Facsimile: (415) 472-3977
4  mdelangis@lucasvalleylaw.com

5  Attorney for Plaintiffs
   APL CO. Pte., LTD. and
6  AMERICAN PRESIDENT LINES, LTD.

FILED
AUG 24 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APL CO. Pte., LTD., a corporation, and AMERICAN PRESIDENT LINES, LTD., a corporation,<br><br>　　　　　Plaintiffs,<br>v.<br>EXPORT INTERNATIONAL INC., a corporation,<br><br>　　　　　Defendant. | No.<br><br>COMPLAINT FOR:<br><br>1. BREACH OF MARITIME CONTRACT;<br>2. OPEN ACCOUNT;<br>3. COMMON COUNT FOR SERVICES PERFORMED |

MEJ

Plaintiffs APL Co. Pte., Ltd. and American President Lines, Ltd. (collectively "APL") complain against defendant Export International Inc. and allege as follows:

**JURISDICTION AND VENUE**

1. The following claims are admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and fall within the admiralty jurisdiction of this Court under 28 U.S.C. §1333.

COMPLAINT

2. Venue is proper in the Northern District of California because a substantial part of the contract's terms and conditions were negotiated by and between APL and defendant in the Northern District of California via APL's contract administration division, located in Oakland, California.

## PARTIES

3. Plaintiff APL Co. Pte., Ltd. is, and at all relevant times was, a corporation duly organized and existing under the laws of Singapore and registered to do business in the State of California.

4. Plaintiff American President Lines, Ltd. is, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Delaware. Plaintiff American President Lines, Ltd. is registered to do business in California.

5. APL is informed and believes, and on that basis alleges that defendant Export International Inc. ("defendant" or "Export") is, and at all relevant times was, a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Oregon.

## GENERAL ALLEGATIONS

6. At all relevant times, APL was and still is an ocean carrier of goods for hire, *inter alia*, between U.S. and foreign ports.

7. On or about February 25, 2009, APL and Export entered into a written service contract, number WB09/0072, whereby APL agreed to transport and convey various commodities from the United States to the Republic of Korea, on behalf of, and at the request of, Export.

8. As part of the service contract entered into between Export and APL for the transportation and carriage of Export's cargo, Export expressly agreed to tender its cargo in a quantity sufficient to satisfy a Minimum Volume Commitment ("MVC") as outlined in the service contract between the parties. Specifically, the service contract stated:

> 3. MINIMUM VOLUME COMMITMENT; DEAD FREIGHT; BOOKING
>
> (a) Merchant shall tender not less than the MVC, including specific sub-MVCs, if any, as set forth in an Appendix, during the term hereof. Shipments shall be deemed within the scope of this Contract and shall be counted toward the MVC if made by Merchant's parent, subsidiary, or other affiliated companies or entities under common control, or by an authorized agent in behalf of any such entity, all of which entities must be identified on the signature page or Appendix hereto. Merchant shall remain responsible to Carrier for all obligations of non Merchant parties shipping cargo under this Contract.

9. The MVC, set forth at Appendix B, expressly obligated Export to tender a minimum quantity of carriage of 50 freight equivalent units ("FEU") before the contract expiration date of January 31, 2010.

10. The service contract between APL and Export contained a liquidated damages provision (known in the trade as dead freight) which provided protection to APL in the event that Export failed to meet the MVC, as it had promised. The liquidated damages provision provided that:

> 3. MINIMUM VOLUME COMMITMENT; DEAD FREIGHT; BOOKING
>
> . . . .
>
> (b) If Merchant fails to tender shipments in sufficient quantity to meet Merchant's undertakings as set forth in the foregoing subparagraph 3(a), Merchant shall, within 30 calendar days of receipt of Carrier's invoice, pay deadfreight in the amount of $350 for each FEU by which the MVC (or sub-MVCs, as the case might be) exceeds the volume actually tendered.

1     11.     After the contract expired on January 31, 2010, APL reconciled the contract to determine whether Export had fulfilled its MVC and shipped the number of FEUs as promised.

    12.     APL determined that during the contract's term, Export had failed to ship any FEUs with APL for transport and carriage. As stated above, Export had promised to ship 50 FEUs under the contract, and in failing to ship the promised number of FEUs, came up short of its contracted volume by 50 FEUs. Accordingly, under the terms of the contract, Export became obligated to pay APL a liquidated damages charge ("dead freight") of $17,500. ($350 for each FEU short of the MVC [$350 x 50 = $17,500]).

    13.     On April 9, 2010, APL issued an invoice to Export for $17,500 and presented the invoice to Export for payment. According to the service contract's terms, Export had 30 days in which to pay the invoice.

    14.     Export failed to pay the invoice within 30 days. And, despite further demands by APL, Export has failed to pay the dead freight owed to APL in connection with the above-described service contract and there is due and owing to APL, from Export, the amount of $17,500 in dead freight charges, in connection with the above-described service contract.

## FIRST CAUSE OF ACTION

**(Breach of Maritime Contract)**

    15.     APL refers to, and by that reference incorporates as if fully set forth herein, each and every allegation set forth in paragraphs 1 through 14, inclusive, hereinabove.

    16.     Pursuant to the terms of the service contract entered into between the parties, Export expressly agreed that if it failed to tender the MVC, it would pay the dead freight charges due and owing under the above-described service contract.

    17.     APL has performed or tendered performance of all of its obligations under the service contract.

18.     Export materially breached the terms of the service contract entered into between the parties by failing to tender the appropriate amount of FEUs under its MVC, and by failing to pay the dead freight charges within 30 days of receiving APL's invoice, as promised.

19.     As a direct and proximate cause of Export's breach of the service contract by failing to tender the appropriate amount of FEUs under its MVC, and by failing to pay the dead freight charges, APL has suffered damages in the amount of $17,500 (excluding interest, costs and attorneys' fees).

## SECOND CAUSE OF ACTION

### (Open Account)

20.     APL refers to, and by that reference incorporates as if fully set forth herein, each and every allegation set forth in paragraphs 1 through 19, inclusive, hereinabove.

21.     Export owes APL the sum of $17,500 that is due with interest since May 2010, in accordance with the terms of the service contract more fully described above.

22.     APL has made demand for payment upon Export and Export has acknowledged receipt of said demand.

23.     Export has refused to pay and continues to refuse to pay the outstanding sum due and owing.

## THIRD CAUSE OF ACTION

### (Common Count - Services Performed)

24.     APL refers to, and by that reference incorporates as if fully set forth herein, each and every allegation set forth in paragraphs 1 through 23, inclusive, hereinabove.

25.     Export is indebted to APL for the amount of $17,500, for the services APL performed at Export's request.

1  26.  Export has failed to pay anything towards the dead freight charge of $17,500;
2  therefore, APL is entitled to recover $17,500, excluding interest, for services performed.
3
4  **PRAYER FOR RELIEF**
5  WHEREFORE, Plaintiffs APL Co. Pte., Ltd. and American President Lines, Ltd.
6  pray as follows:
7  1.  The Court enter judgment in APL's favor for $17,500, the full amount of
8  APL's claim;
9  2.  The Court award APL prejudgment interest on all sums as provided by
10  law;
11  3.  The Court award APL its costs of suit;
12  4.  The Court award APL its attorneys' fees as per the terms of the service
13  contract;
14  5.  The Court award APL such other and further relief as the Court may deem
15  proper.
16
17
18  DATED: August 24, 2012
19
20                                          LUCAS VALLEY LAW
21
22                              By: /s/ Mark K. de Langis
                                    Mark K. de Langis
23                                  Attorneys for Plaintiffs
                                    APL Co. Pte., Ltd. and
24                                  AMERICAN PRESIDENT LINES, LTD.
25
26

COMPLAINT

6